IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

THOMAS LEE STONE                                                                                    PLAINTIFF

         v.                              Civil No. 06-2143

SHERIFF MIKE ALLEN;
and CHARLES WALL                                                                                DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

    The plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds pro se and in forma pauperis.

    Plaintiff is currently incarcerated in the Arkansas Department of Correction. The events at issue in this lawsuit occurred while the plaintiff was incarcerated at the Crawford County Detention Center. Specifically, plaintiff contends he was denied adequate medical care.

    Defendants filed a summary judgment motion (Doc. 20). To assist plaintiff in responding to the motion, a questionnaire was propounded (Doc. 24).

    Plaintiff filed a timely response to the questionnaire (Doc. 25). The summary judgment motion is before the undersigned for issuance of this report and recommendation.

### Background

    Stone was arrested and booked into the Crawford County Detention Center (CCDC) on June 27, 2006. *Plaintiff's Response* (*hereinafter Resp.*)(Doc. 25) at ¶ 1. Stone indicates he didn't know when he got locked up but was told three days later when he woke up. *Id.*

Stone was being held for trial on pending criminal charges. *Resp.* at ¶ 2. He was convicted on June 29, 2006, and sentenced to four life sentences and five twenty year terms. *Id.* at ¶ 3.

During Stone's intake, the AHEC Clinic was contacted and Dr. Siddiqui's nurse was spoken to regarding Stone's medication. *Defts' Ex.* B. Detention center personnel were told that Stone was to receive the following medication: Lipitor 1 pill a day in the a.m.; Plavix 1 pill a day in the a.m.; Nexium 1 pill a day in the a.m.; St. Joseph's Aspirin 1 pill a day in the a.m.; Cozaar 1 pill a day in the a.m.; and Combivent 1 time daily in the a.m. *Defts' Ex.* D at page 1.

Stone's medication cards were filled out. *Defts' Ex.* B. Stone's Mother was contacted and according to notations on Stone's intake papers she indicated she should be called when Stone needed medication refills. *Id.*

Stone contends he was also supposed to receive other medication. *Resp.* at ¶ 5. He indicates he had his Mother bring his medications for him. *Id.* When he ran out of medication, Stone states he was told that he had to call his Mother that detention center personnel were not going to call her. *Resp.* at ¶ 7.

On July 9, 2006, Stone was seen by Nurse Charles Wall. *Defts' Ex.* D at page 1; *Defts' Ex.* F at 2. According to Wall, Stone asked for opiate medication, Xanax, and muscle relaxers. *Id.* Stone stated he ran out of medications due to his doctors terminating their relationships with him for inappropriate use. *Id.* Stone stated he had a history of cardiac problems, stroke, RSD,[1]

---

[1] Stone was asked whether RSD stood for Reflex Sympathetic Dystrophy or something else. He responded that he could not recall. *Resp.* at 15(B).

and stomach bumps.  *Id.*  Wall noted Stone stated a doppler of his leg was negative.  *Id.*  Wall noted Stone was in no acute distress.  *Id.*  Wall ordered a forty-eight hour activity log.  *Id.*

According to Stone, he told Wall in was in a lot of pain.  *Resp.* at ¶ 8.  Stone asserts Wall indicated he would only give him Ibuprofen.  *Id.*  Stone told Wall he needed to see a doctor not just a nurse and Wall refused.  *Id.*  Stone maintains the officer saw him in pain and crying.  *Id.*

On July 17th, Stone was seen by Wall complaining of pain and anxiety.  *Defts' Ex.* D at page 1; *Defts' Ex.* F at 3.  Wall's notes indicate Stone reported he had ran out of pain medication and benzodiazepines prior to his arrest.  *Id.*  Stone complained of generalized pain "post-RSD-CVA."  *Id.*  Stone stated he needed muscle relaxers and sleeping medications.  *Id.*  He claimed his doctor was new and would not see him due to the fact he was in jail.  *Id.*  Stone said his previous doctor had fired him.  *Id.*

Wall noted Stone admitted he had a low cognitive level.  *Defts' Ex.* D at page 1; *Defts' Ex.* F at 3.  He also noted Stone appeared to be older than forty-five.  *Id.*  Wall ordered a forty-eight hour activity log.  *Id.*

According to Stone, he told Wall that he couldn't see his new doctor because he could not pay.  *Resp.* at ¶ 9(A).  Stone indicated he told Wall the doctor would see him if she got paid.  *Id.*

On July 18th, Stone submitted a grievance.  *Resp.* at ¶ 10.  He stated he had filled out three medical requests and had not seen a doctor yet.  *Id.*  He indicated he was tired of hurting and "other stuff."  *Id.*  He stated it took two hours to get a band-aid the other night.  *Id.*  He also said the nurse told him the same old story when he saw him.  *Id.*

The written response to the grievance states that if Stone did not like what the nurse told him that he could have his family make an appointment with his doctor at his expense and they would transport him. *Defts' Ex.* C at page 1. However, Stone contends he was told he would be taken to the doctor in thirty-five days. *Resp.* at ¶ 11.

On July 24th, Stone requested pain medication. *Resp.* at ¶ 12. According to Wall's notes, Stone denied any acute pain or distress and merely asked for Tylenol daily. *Defts' Ex.* D at page 1; *Defts' Ex.* F at 4. Wall okayed Stone receiving two tablets of Tylenol daily, but only as requested. *Id.*

Stone maintains he never denied he was in pain and distress. *Resp.* at ¶ 13. Instead, he states Wall would only give him Tylenol. *Id.* Furthermore, he states he never got the Tylenol on a daily basis. *Id.* Stone indicates some of the officers saw him crying with pain a lot and said they wished they could do something for him. *Id.*

On July 31st, according to Wall's notes, Stone complained that his whole body was aching. *Defts' Ex.* D at page 1; *Defts' Ex.* F at 5. Stone was seen by Wall. *Id.* According to Wall, Stone requested Tylenol twice daily for pain and reported the Tylenol was effective. *Id.* Wall okayed Stone receiving two tablets of Tylenol twice daily as needed for aches. *Id.*

Stone asserts that he never received Tylenol twice daily for pain. *Resp.* at ¶14(B). He also denies reporting that the Tylenol was effective. *Id.* In fact, he states he told Wall the Tylenol was not effective. *Id.* In response, Stone indicates Wall said that was all Stone was going to get. *Id.*

On August 1st, Stone submitted a grievance. *Resp.* at ¶15(A). He stated he had asked several times to see a doctor to no avail. *Id.* He stated he was not getting his proper medication that he had been taking on the streets. *Id.* He stated he suffered a stroke in the past and had RSD because of the stroke. *Id.* He also indicated he suffered a nervous breakdown, had migraine headaches, was supposed to be on a breathing machine, was having blurred vision, and was having problems sleeping at night. *Id.* Although he had spoken to the nurse, he stated it did no good. *Id.* In response, Stone was given a medical request form and told it would be looked into. *Id.* at 15(C).

On August 7th, Stone was seen by Wall because of complaints of numbness. *Resp.* at 16(A). Stone complained of chronic numbness to the right side that came and went. *Defts' Ex.* D at page 2; *Defts' Ex.* F at 6. Wall noted Stone's patellar reflexes were intact, his motor skills were intact, and his "neuros unchanged." *Id.* Wall ordered a twenty-four hour log of Stone's activities be kept. *Id.*

On August 14th, Stone submitted a grievance stating he had been told that after 35 days he would be taken to see a doctor. *Resp.* at ¶ 17(A). He stated he needed to see a doctor for his health problem as soon as possible. *Id.* In response, Stone was told his family could set him up an appointment and pre-pay it with his personal physician. *Id.* at ¶ 17(B).

Stone asserts he was told the defendants were not going to pay for him to see a doctor or pay for his medicine. *Resp.* at ¶ 17(B). Stone states defendants knew he could not pay for his own medical care. *Id.*

On August 14th, Stone was seen by Wall for complaints of body aches. *Resp.* at ¶ 18(A). Stone told Wall the Tylenol was not satisfactory and he asked for a change in medication. *Id.* at ¶ 18(B). Wall noted that Stone's gait was not good and his range of motion was not good. *Id.* He noted Stone did not have a rash on his buttocks as claimed. *Id.* Wall prescribed Naproxen. *Defts' Ex.* D at page 2; *Defts' Ex.* F at ¶ 7.

Stone maintains he did have a rash. *Resp.* at ¶ 18(B). He does not recall if he received the Naproxen. *Id.* at ¶ 18(D).

Stone was asked to describe in detail how Wall exhibited deliberate indifference to his serious medical needs. Stone replied that Wall said he did not like him and was not going to help him. *Resp.* at ¶ 19. According to Stone, Wall stated he was not going to recommend that Stone see a doctor and was not going to give Stone any medication other than Tylenol or Ibuprofen. *Id.* When Stone would explain his medical problems, he asserts Wall would merely respond: "Oh, well." *Id.*

Stone never spoke directly to, or communicated directly with, Sheriff Mike Allen regarding his medical needs. *Resp.* at ¶ 20. Stone asserts he tried to get one of the officers to tell the sheriff he wanted to see him but it never happened. *Id.* If Stone indicated he never spoke to, or communicated with the sheriff, he was asked to describe in detail how he believed Sheriff Allen violated his federal constitutional rights. Stone did not reply. *Resp.* at page 16. Stone does however state that the head jailer told him that the sheriff knew about Stone's problems. *Id.* at page 17.

AO72A
(Rev. 8/82)

## Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## Discussion

Defendants have now moved for summary judgment. They contend there is no evidence Stone was denied any necessary medical treatment. With respect to Sheriff Allen, defendants contend there is no evidence he played any role in determining what type of medical treatment should be given to Stone. They contend there is simply no basis on which the sheriff can be held liable.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a

-8-

constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

In this case, we believe there are genuine issues of fact as to whether Wall exhibited deliberate indifference to Stone's serious medical needs. The summary judgment record indicates that when Stone was booked in it was reported that he was on a variety of medications including Lipitor, Plavix, Nexium, St. Joseph's Aspirin, Cozaar, and Combivent. *Defts' Ex.* D at page 1. Stone indicates he did not receive this medication and/or ran out of the medication and the detention center would not supply the medication despite the fact Stone was without funds to obtain the necessary medication.

Wall's notes also indicate that on several occasions he prescribed Tylenol or Ibuprofen for Stone on a daily basis. However, Stone denies he received the Tylenol or Ibuprofen on this basis. On another occasion Wall prescribed Naproxen. There is nothing in the summary judgment record to indicate when medication was dispensed to Stone.

Stone also made multiple requests to be medically evaluated and asked to be seen by a doctor. Although he was seen by Wall on a number occasions, there is no indication Wall even

-9-

considered referring him to a doctor for evaluation. Furthermore, Stone was told if he was not satisfied with the treatment he received from Wall he could have his family set up an appointment with a private physician and pay for it and detention center personnel would transport Stone to the appointment. Thus, it appears Wall effectively blocked Stone's access to further medical treatment unless Stone had private funds to arrange other treatment himself.

Additionally, while Wall indicates in his notes that he ordered an activity log on three separate occasions, the activity logs are not in the summary judgment record nor is there any indication in Wall's notes that he reviewed the logs. In short, there is nothing to suggest Wall actually made a determination if medical treatment was necessary based on Stone's level of activity.

With respect to Sheriff Allen, there is no evidence this defendant was personally involved in making any decisions regarding Stone's medical care or treatment. In fact, Stone concedes he was not. *Resp.* at ¶ 20. *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).

### Conclusion

For the reasons stated, I recommend that the defendants' motion for summary judgment (Doc. 20) be granted in part and denied in part. Specifically, I recommend that the motion be granted with respect to Sheriff Mike Allen and all claims against him be dismissed. I recommend the motion be denied with respect to plaintiff's claims against Charles Wall.

-10-

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 22nd day of August 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)